[Cite as *Kent v. Leo's Ent., L.L.C.*, 2021-Ohio-946.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| JILL KENT, | : | |
| Plaintiff-Appellant, | : | No. 109730 |
| v. | : | |
| LEO'S ENTERPRISE, L.L.C., ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 25, 2021

Civil Appeal from the South Euclid Municipal Court
Case No. CVF 1800352

*Appearances:*

Fanger & Davidson L.L.C., Jeffrey J. Fanger, and Gerry Davidson, *for appellant.*

Harvey B. Bruner Co., L.P.A., and Harvey B. Bruner, *for appellees.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant Jill Kent ("Kent") appeals the decision of the trial court that adopted the magistrate's decision, over her objections, and granted

judgment in favor of defendants-appellees Leo's Enterprise, L.L.C., and Anthony Turner ("Turner").  Upon review, we affirm.

**Background**

{¶ 2}   On July 20, 2018, Kent filed an amended complaint that raised claims against appellees and other defendants for breach of contract and violation of the Ohio Consumer Sales Practices Act ("CSPA").[1]  Kent alleged that on or about July 13, 2017, she entered an oral contract with appellees for tree trimming and removal on her property, that the parties agreed upon a price of $2,200 cash, and that appellees failed to complete the work.  Kent sought compensatory damages in the amount of $1,601.25.

{¶ 3}   Kent filed a motion for summary judgment that was opposed by appellees.  The trial court denied the motion for summary judgment, and the case proceeded to trial before a magistrate.

{¶ 4}   Turner testified that when he receives a job, he sends others to do the work.  For Kent's job, he initially sent Darrell Hutchinson Jr. ("Hutchinson") of Hutchinson Lawn Care to assess the work to be done.  Turner never went to Kent's property.   Turner stated that after conferring with Hutchinson and receiving pictures of the job, he quoted Kent for the tree work.  He testified that Kent never provided a number of trees and there was no written agreement specifying the

---

[1] The other named defendants included Darrin Hutchinson Jr. and Hutchinson Lawn Care L.L.C., against whom default judgment was obtained in the amount of $6,600; and Brandon Tree Service and "Unknown Principle [sic]" of Brandon Tree Service, who later were dismissed for failure to perfect service.

number of trees to be cut down. After initial work was performed by Hutchinson Lawn Care, Kent contacted Turner to express her dissatisfaction and her refusal to pay.

{¶ 5} According to Turner, the parties reached an agreement that Kent would pay $2,200 and that the scope of work was to include the removal of a number of trees on the side of her property up to the air conditioner plus the removal of a large tree. Kent brought Brandon Tree Service ("Brandon") onto the job to perform the work the next day. Turner testified that Kent paid the $2,200 after the work was completed, that the job was finished, and that he believed Kent was satisfied because she paid. Turner stated that he took a $100 loss on the job because he owed $2,300 to Hutchinson and Brandon. Turner testified that days later, Kent contacted him and told him there were additional trees she wanted cut down. Turner quoted Kent $1,200 for the additional tree work. No further payment was made, and no additional tree work was performed.

{¶ 6} The evidence at trial revealed that prior to contacting Turner, Kent received an estimate from Anywhere Tree Service for the removal of 15 trees and a large pine for approximately $3,200. According to Kent, after contacting Turner, Hutchinson came to look around and they discussed the work that needed to be done. She claimed this was the same work she had quoted by Anywhere Tree Service and included cutting flush to the ground a very large pine tree and trees along the side of her house back to her neighbor's garage, and trimming back trees over her driveway that were hitting her roof. She testified that Hutchinson took pictures of

the trees she wanted cut down that were sent to Turner. She testified that Turner gave her a quote of $2,200, which included $700 for the large pine tree and $1,500 for the rest of the work. Kent conceded during her testimony that she never told appellees a specific number of trees she wanted cut down and there was never any written proposal from appellees.

{¶ 7} Kent testified that after her initial dissatisfaction, she agreed to pay $2,200 for the trees to be cut flush to the ground, the removal of the large pine tree, and trimming. She confirmed that she exchanged text messages with Turner. She testified that Brandon cut down the large tree on her property and several trees on the side of the house back to the air conditioning unit, which was "maybe 10 trees."

{¶ 8} Kent further claimed that when she made the $2,200 payment, the job was not completed. She testified that she contacted Turner and asked about the rest of the trees. Kent testified that Turner asked her to pay the money and he would send someone out the next week. She stated that because Brandon had done "a good portion of the work," she paid the $2,200 for the whole job with the understanding that they would be back the following week "to finish the rest of the trees and then trim on the side of my driveway." Kent stated that her daughter wrote on a receipt the work that was left to be done and that Hutchinson signed this receipt.

{¶ 9} Photographs were introduced that depicted a very large pine tree on the property and several trees along the side of the house. Copies of text messages exchanged by the parties, requests for payment, a receipt, and estimates were also introduced. The text messages show that after the initial work was completed by

Hutchinson Lawn Care, Kent expressed her dissatisfaction.  Turner stated his desire to get everything straightened out the following day.  The next morning, he sent a message to Kent stating that "Brandon will be over * * * today to finish the job cut down the big tree in the front and all the ones that he didn't cut down yesterday $2,200 when the job is finished."  Kent agreed.  Several days later, Kent sent a message to Turner asking who would be there to finish the job, including "[t]he rest of the trees on right side of the house and cutting back the tree over the house and drive on the left side?"  Turner responded that the additional trees were not included in the original job and that the additional tree work would be another $1,200.  Kent insisted the job was not completed and claimed that when the $2,200 was paid she understood they would be back the following week to complete the job.  Turner continued to express that the additional tree work was not part of the parties' agreement, stating "there's been a misunderstanding Hutchinson cut down a bunch of trees three truckloads full that was [$]1,500 you would not pay him Brandon cut down the big tree I charge you $700 you would not pay you said $2,200 * * *."  The requests for payment Kent received from Hutchinson Lawn Care reflected a price of $2,200 for the work that had been performed.  There was a notation from Kent on a receipt regarding work left to be done.  There also was an estimate from Anywhere Tree Care for $1,601.25 for the work Kent claims remained to be finished.

{¶ 10}  On April 30, 2019, the magistrate issued a decision finding in favor of appellees.  Kent filed objections to the magistrate's decision and a request for findings of fact and conclusions of law.  The trial court ordered the parties to submit

proposed findings of fact and conclusions of law, and the parties complied. On January 24, 2020, the magistrate issued findings of fact and conclusions of law that stated as follows: "The Court accepts and incorporates in part and rejects in part portions of the Parties' proposals." Although the magistrate did not specify which parts of the proposals were accepted or rejected, the magistrate included his own findings and conclusions "based on the evidence submitted at trial and the credibility of the witnesses" that stated in part:

> That the $2,200 paid by Plaintiff to Defendant was the extent to which there was a contractual obligation and a meeting of the minds and thus the contract covered. There was no meeting of the minds and thus no contract for the additional tree removal work performed subsequent to the initial contract, and thus Plaintiff is not entitled to any damages.

{¶ 11} Kent filed supplemental objections to the magistrate's decision. On April 7, 2020, upon review and consideration of the matter, the trial court approved the magistrate's decision and adopted the recommendations therein, over Kent's objections. The trial court rendered judgment in favor of appellees.

{¶ 12} Kent timely filed this appeal.

**Law and Analysis**

{¶ 13} Kent raises twelve assignments of error for our review. We shall address them out of order and group them together as conducive to our analysis.

{¶ 14} Kent's tenth and twelfth assignments of error challenge the trial court's findings of fact and conclusions of law. Under her tenth assignment of error, Kent claims the trial court erred by not properly setting forth findings of fact and conclusions of law and violated Civ.R. 52 and her due process rights by failing to

specifically list the "incorporated" findings of fact and conclusions of law. Under her twelfth assignment of error, Kent claims the trial court's failure to include any findings of fact and conclusions of law on the CSPA claim is plain error.

{¶ 15} "[A] magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law." Civ.R. 53(D)(3)(a)(ii). "'[I]f a magistrate has not prepared findings of fact * * *, the burden is on the party objecting to request findings of fact from the magistrate pursuant to Civ.R. 52 and Civ.R. 53(D)(3)(a)(ii).'" *Foster v. Foster*, 10th Dist. Franklin No. 15AP-1157, 2017-Ohio-4311, ¶ 60, quoting *Casper v. Casper*, 12th Dist. Warren No. CA2012-12-128, 2013-Ohio-4329, ¶ 39. When a timely request is made, the magistrate may require any or all of the parties to submit proposed findings of facts and conclusions of law. Civ.R. 53(D)(3)(a)(ii); *see also* Civ.R. 52.

{¶ 16} The purpose of separate findings of fact and conclusions of law is "'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.'" *In re Adoption of Gibson*, 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986), quoting *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). "Ohio courts have determined that when a magistrate's decision substantially complies with Civ.R. 53, in the absence of prejudice, the failure to issue additional findings of fact and conclusions of law is not reversible error." *Slosser v. Supance*, 10th Dist. Franklin No. 20AP-15, 2021-Ohio-319, ¶ 13, quoting *In re Citywide Ambulance Servs., Inc. v. Ohio Dept. of Human Servs.*, 10th Dist. Franklin No. 96APE08-1119, 1997 Ohio App. LEXIS 1551 (Apr. 17, 1997). When

the contents of the magistrate's decision, considered with the rest of the record, forms an adequate basis to decide the issues presented on appeal, it substantially complies with Civ.R. 53(D)(3)(a)(ii). *Id.* at ¶ 14-15. The same holds true when findings of fact and conclusions of law are made by a trial court pursuant to Civ.R. 52. *See Ferrari v. Ohio Dept. of Mental Health & Mental Retardation*, 69 Ohio App.3d 541, 545, 591 N.E.2d 284 (10th Dist.1990).

{¶ 17} In this case, the magistrate issued a general decision that granted judgment in favor of appellees on all claims. Kent timely requested findings of fact and conclusions of law, the trial court required the parties to submit proposed findings of fact and conclusions of law, and the magistrate issued a decision that substantially complied with Civ.R. 53(D)(3)(a)(ii). Although no specifics were provided regarding the accepted portions of the parties' proposals, the magistrate proceeded to set forth findings and conclusions that were determinative in the matter. The magistrate found "the $2,200 paid by Plaintiff to Defendant was the extent to which there was a contractual obligation and a meeting of the minds and thus the contract covered." Further, the magistrate found "there was no meeting of the minds and thus no contract for the additional tree removal work performed subsequent to the initial contract, and thus Plaintiff is not entitled to any damages." Thereafter, Kent filed supplemental objections. The trial court, upon its review and consideration of the matter, adopted the magistrate's decision over Kent's objections and entered judgment for appellees.

{¶ 18} Our review reflects that the magistrate's decision substantially complied with Civ.R. 53(D)(3)(a)(ii), and we find that additional findings of fact and conclusions of law were not necessary. Kent fails to cite any authority to show that a due process violation occurred. The trial court's decision, when considered with the rest of the record, forms an adequate basis for our review. Therefore, no reversible error occurred. Kent's tenth and twelfth assignments of error are overruled.

{¶ 19} Under her first, second, third, sixth, eighth, and eleventh assignments of error, Kent challenges the trial court's judgment on her breach of contract claim. Kent claims the judgment is against the manifest weight of the evidence and challenges the trial court's findings, or implicit findings, that a contract did not exist between the parties, that a meeting of the minds had not occurred, that appellees were not in breach of contract, and that Kent was not harmed by the breach. Kent also claims that the trial court abused its discretion by not properly determining the factual issues in dispute and that the trial court did not appropriately apply the law to the facts of the case.

{¶ 20} The Supreme Court of Ohio has stated that the standard of review for manifest weight in a criminal case, which was set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, also applies in a civil case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. In conducting a review on manifest weight, the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Moreover, this court must make every reasonable presumption in favor of the trial court's judgment and findings of facts and, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the trial court's judgment. *Eastley* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 21} "'Essential elements of a contract include an offer, acceptance, contractual capacity, consideration * * *, a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). "'A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19, quoting *Kostelnik* at ¶ 16. Furthermore, "to be enforceable, 'the contract must be definite and certain.'" *Id.*, quoting *Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 22} In this case, the trial court found that the parties had an oral contract for the tree work that was performed, but never had an enforceable contract for the additional tree work that Kent claims appellees failed to complete. Turner's

testimony was that Kent agreed to pay $2,200 for the removal of trees along the side of her property plus a large pine tree on the property. The text messages show that Kent agreed to the work and that payment was to be made when the job was finished. The record also shows that ten trees and the large pine tree were removed and the requests for payment from Hutchinson Lawn Care set forth the work that was completed for the price of $2,200. Kent paid the $2,200 after this work was completed. Appellees maintained that they did not agree to remove any additional trees.

{¶ 23} Although Kent claims it was her understanding that the parties' oral contract was for all of the trees and that the additional tree work was within the scope of the contract, she never told appellees the specific number of trees she wanted cut down and there was never any written proposal specifying the number of trees. We also recognize the written estimate that Kent received from Anywhere Tree Service for the removal of fifteen trees, the large pine, and trim work was for $3,202.50, which was $1,000 more than she paid for the work that was performed, and the estimate for the work that Kent claimed was unfinished was for $1,601.25.

{¶ 24} The record further shows that Turner quoted Kent $1,200 for the additional work, which included five trees. When Kent inquired with Turner about the rest of the work, Turner informed Kent that there had been a misunderstanding regarding the additional tree work. The record demonstrates there was no meeting of the minds with regard to the additional tree work. Also, the fact that Kent's daughter made a notation regarding work to be performed on a receipt signed by

Hutchinson does not establish that the additional tree work was within the scope of the parties' oral contract, nor did this constitute the formation of a new contract.

{¶ 25} In conducting our review, we must make every reasonable presumption in favor of the trial court's judgment and findings of facts. *See Eastley* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21. In doing so, we agree that the additional tree work was not covered by the parties' oral contract and that the parties never subsequently entered an enforceable contract for the additional tree work. Moreover, the record reflects that there was no meeting of the minds or a definite and certain contract for the additional tree work. Therefore, no breach occurred and Kent is not entitled to damages. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we do not find the trial court clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

{¶ 26} Finally, we find no merit to Kent's remaining challenges regarding her claim for breach of contract. Our review reflects that the trial court properly determined the factual issues and that the trial court appropriately applied the law to the facts of the case. The trial court explicitly found a meeting of the minds existed as to the contract for $2,200 made between the parties, which was the extent of any contractual obligation, but the court found there was no meeting of the minds and no contract existed as to the additional tree work requested by Kent. The trial court never determined, as Kent suggests, that a partial meeting of the minds existed.

That Kent disagrees with the findings and conclusions of the trial court does not mean that the trial court erred.

{¶ 27} Accordingly, the assignments of error relating to the claim for breach of contract are overruled.

{¶ 28} Under her fourth, fifth, seventh, and ninth assignments of error, appellant challenges the trial court's judgment on her claim that appellees were in violation of the CSPA, R.C. 1435.01 et seq. Kent claims that the trial court's judgment on the CSPA claim was against the manifest weight of the evidence and challenges the implicit findings that appellees were not in violation of the CSPA and that Kent was not harmed by the alleged violation. Kent also claims that the trial court abused its discretion by not properly applying the law to the facts of the case and by failing to properly determine the factual issues in dispute.

{¶ 29} "The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 10, citing R.C. 1345.02(A) and 1345.03(A). "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating the consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

**{¶ 30}** The record in this case does not support a finding that any violation of the CSPA occurred. The record reflects that appellees provided an oral estimate for tree work upon Kent's request and made a good faith effort to resolve the issues with Turner when she expressed her dissatisfaction. The parties agreed upon a price that was to be paid when the work was finished. The work that was agreed to by the parties was completed, and Kent paid the $2,200. The record does not support Kent's claim that appellees made misleading statements about the scope of the work. Kent confirmed she never told appellees the number of trees she wanted cut down and there was no written proposal specifying the number of trees. The record also demonstrates that the parties never entered an enforceable contract for the additional tree work. Appellees quoted Kent $1,200 for the additional tree work, which was consistent with the other estimates Turner received. Also, Turner's statement that there was a misunderstanding and his position that appellees were not obligated to perform the additional work were not false or deceptive statements or unconscionable acts. *See Heisler v. Mallard Mechanical Co., L.L.C.*, 10th Dist. Franklin No. 09AP-1143, 2010-Ohio-5549, ¶ 28.

**{¶ 31}** Our review reflects no violation of the CSPA occurred, Kent was not entitled to damages on this claim, and the trial court's judgment in favor of appellees on her CSPA claim was not against the manifest weight of the evidence. We also find no merit to Kent's remaining challenges regarding her CSPA claim. Kent's assignments of error relating to her claim for violation of the CSPA are overruled.

**{¶ 32}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
EILEEN A. GALLAGHER, J., CONCUR